<div style="text-align:right">Olcott<br>v.<br>Morey.</div>

- Verdict of the Jury affirmed.

PRESENT,

*ENOCH WOODBRIDGE*, Chief Judge.
*LOTT HALL*,  } *Assistant Judges.*
*NOAH SMITH*,  }

SAMUEL UDALL, Appellee,

*against*

WILLIAM RICE, Sheriff of Windsor County, Appellant.

DECLARATION for taking insufficient bail.

Plaintiff declared in case, that he recovered judgment against *Seth Emmons*, at the *Windsor* County Court, holden on the third *Monday* of *September*, 1799, for 86 dols. 64 cts. damages, and 6 dols. 26 cts. costs of suit; and on the 30th of the same month purchased out his writ of execution, and on the same day delivered the same execution to the defendant *Rice*, in his capacity of sheriff of the County, to serve and return, according to law; who returned on the same execution, that he had committed the body of *Seth Emmons* to the common gaol in *Woodstock*,

<div style="float:right; width:30%">A sheriff must at his own risk take such bail for prisoners admitted to the liberties of the gaol yard, as, in case of escape, shall be sufficient to satisfy a judgment in favour of a creditor, *in money*.</div>

Udall
v.
Rice.

*Windsor* County. That on the 26th day of *November*, 1799, the sheriff admitted *Seth Emmons* to bail for the liberties of the gaol yard, and took a bond of that date for that purpose, made and executed by *Seth Emmons* as principal, and *Lysander Richardson* as surety, with the usual conditions; which bond became absolute by the escape of *Seth Emmons;* and on the 20th *January*, 1800, sheriff *Rice* assigned the bail-bond to the said *Samuel Udall*, who, upon the 5th of *March*, 1800, commenced his action upon the bond against *Seth Emmons* and *Lysander Richardson*, before the *Windsor* County Court, holden on the third *Monday* of *March*, 1800, and recovered judgment against them for 106 dols. 74 cts. damages, and 15 dols. 2 cts. costs of suit; and the said *Samuel Udall*, on the 25th of *September*, 1800, took out his writ of execution on said judgment, and on the same day delivered the same execution to the said sheriff to levy, serve and return; and the said sheriff made return on said execution, that he had arrested the body of the said *Seth Emmons*, and committed him to the gaol in *Woodstock* aforesaid, and on the same execution returned a *non est inventus* as to *Lysander Richardson;* and the said *Samuel Udall*, on the 1st day of *January*, 1801, took out an *alias* execution against *Lysander Richardson* on the same judgment, and on the same day delivered the same to *John Palmer*, constable of *Woodstock* aforesaid, to levy, serve and return; who returned on the same *alias* execution, that he had arrested the body of the said *Lysander Richardson*, and him committed to the common gaol in *Woodstock* aforesaid. By means of all which, and the insufficiency of the said *Seth Em-*

*mons* and *Lysander Richardson*, the obligors in the bail-bond aforesaid, to respond said judgment, the said *Samuel Udall* hath totally lost the benefit of the said judgment: and he avers the judgment remains in full force, and in no part paid or satisfied, and an action hath accrued, &c. *ad damnum*, 400 dollars.

Defendant pleaded not guilty, and gave notice that he should give the following special matters in evidence under the statute, viz.

That the said *Lysander Richardson, at the time* he was accepted as bail for the said *Seth Emmons*, was a good and sufficient freeholder, resident within this State, and possessed estate both real and personal to the amount of three thousand dollars.

<div align="right">Cause to the Jury.</div>

*Titus Hutchinson*, for the defendant, now offered to shew in evidence the facts stated in the above notice.

*Charles Marsh*, for the plaintiff. We object to such facts going in evidence to the Jury. The defendant's right to give any especial matter in evidence under the general issue, must result from the 98th section of the act commonly called the judiciary bill; which provides, " that the general issue of not guilty, *nil debet*, or any other general plea proper to the action, whereby the whole declaration is put upon proof, according to the nature of the case may be made by the defendant; under which general plea the defendant shall have liberty, upon trial of the cause, on such general issues, to give any special matters in evidence, in his defence or justification, as the nature

*Vermont* Stat,
vol. 1. p. 95.

Udall
v.
Rice.

of the action may be, the defendant giving notice in writing, with the plea of the special matter or matters on which he or she shall rely in such defence or justification; and no special matter shall be given or allowed in evidence, except such as shall be particularly mentioned in such notice in writing as aforesaid."

Here the Legislature, to abbreviate and to render modes of pleading more simple, and perhaps in tenderness to the more uninformed practitioners at the bar, have provided a more summary mode of pleading matters in justification than the ancient mode of pleading in bar.  Although the elder mode was familiar to every man of decent acquirements in his profession, and affected a precision which it is apprehended will not always be produced by the new statute mode, yet it must be confessed the novel mode will lessen the labours of the indolent, and sometimes prevent the ignorant from being entangled in the mazes of mere technical pleading.  And so far the Legislature have acted wisely.  But the objects of the statute are merely to render the mode of pleading brief and plain, but not to countenance error; to render the path of justice more facile and plain, but not to encourage or protect the ignorant in their aberrations.  If a practitioner at the bar has matters in justification or defence which may avail his client in a plea in bar, he is not restrained by the statute from clothing his justification or defence in such plea.  But if he will prefer the statute mode of giving notice of such special matters in justification or defence under the general issue, he must be confined in his notice to such special matters as would be proper

in a plea in bar to the action; and as the replicant to a plea in bar, if he would shew that the matters therein pleaded are impertinent, and form no legal answer to his declaration, may demur to such plea, so here, when under general issue notice is given of irrelevant and immaterial matters, to be shewn in evidence and insisted upon in justification or defence in this new and lax mode of pleading. If the plaintiff is exposed to be injured by such impertinent matters, he may object to the evidence of such matters being shewn to the Jury, although stated in the notice in the nature of a demurrer to the evidence. This being the intent of the statute, and the practice necessarily growing out of it, to carry its design into effect without injury to parties, we shall in the present case object to the evidence of such facts as are stated in the notice going to the Jury, and shew that they are such facts as are impertinent to the issue, and could not avail the defendant in justification or defence, if more regularly pleaded in bar.

When a sheriff has committed the body on execution, taken a bond of the prisoner, with surety admitting him to the liberties of the prison yard, and an escape is made, the sheriff must exhibit his bond and offer to assign it to the creditor, or pay the contents of the execution: if he assigns the bond, and the creditor brings suit against the bail, recovers judgment, takes out execution, and a *non est* is returned upon it, and a suit is commenced against the sheriff, he cannot in his defence shew that the bail *was*, but he must shew that it *is* sufficient. The language of the sheriff here is, " I have taken your execution to collect. I have committed the debtor to gaol. I have admitted

28

Udall
v.
Rice.

him to the liberties of the gaol yard. He has escaped. I have assigned you the bail-bond. You have prose-cuted the bail. He is *now* found to be insufficient to respond the judgment, but when I accepted him as bail, in my opinion he was a man of sufficient pro-perty, and I now give you notice I can prove it."

But though this is the language of the sheriff, it is fortunate for my client the plaintiff it is not the lan-guage of the law.

*Vermont* Stat.
vol. 1. p. 280.
284.

We shall read the act entitled, an act relàting to gaols and gaolers, and for the relief of persons im-prisoned therein, sections 10th and 11th.

The former section provides, " that any person im-prisoned in gaol on mesne process in any *civil action*, or upon execution founded on a proper action of debt, covenant, contract, or promise, shall be admitted to the liberties of the gaol yard; such prisoner first giving bond to the sheriff of the County in which he shall be imprisoned, with one or more sufficient sureties, being freeholders resident within this State, to be bound jointly and severally in such sum as the sheriff shall direct, with a condition in the same bond, un-derwritten in the form following," &c.

The latter section provides, " that when the con-dition of any bond legally taken as aforesaid, for ad-mitting a debtor to the liberties of the gaol yard, shall be broken, such bond shall be assignable to the cre-ditor or creditors, who may maintain action thereon in his, her, or their own names, and shall be entitled to all the privileges and advantages thereon, to which the sheriff or other officer taking the same would be entitled if the action were brought by him. And no action shall be maintained against any officer taking

such bond, for an escape, or other cause mentioned in the condition thereof, unless the creditor or creditors shall have sued the bond taken by such officer and assigned as aforesaid, and be unable to recover the debt or damages, if the sheriff or other officer who took the bond shall upon demand made assign such bond to the creditor or creditors; and if the signer or signers of such bond shall be unable to satisfy the judgment recovered thereon, or if the creditor or creditors shall not be able to recover judgment on such bond against him, her, or them, on account of the neglect, laches or default of the officer, the creditor or creditors may sue the officer taking such bond upon the original cause of action, and shall recover against him all damages which such creditor or creditors shall have sustained."

Udall
v.
Rice.

The language of the statute is, " that when a person is committed on execution, and the nature of the judgment is bailable, he may be admitted to the liberties of the gaol yard; that the sheriff may take a bond, with one or more sufficient sureties, conditioned that the prisoner shall not depart the liberties unless lawfully discharged; that in case of escape the sheriff may assign such bond to the creditor, who shall be entitled on suit to all the advantages to which the sheriff would be entitled; that no suit shall be brought by the creditor against the sheriff until he has prosecuted the assigned bond; if the signer or signers of such bond shall be unable to satisfy the judgment recovered thereon, or if the creditor is impeded in the recovery of the judgment by the neglect, laches or default of the officer, the creditor may sue the officer taking such bond upon the ori-

Udall
v.
Rice.

ginal cause of action, and shall recover against him all damages which he has sustained." The one case contemplated by the statute, in which the creditor shall recover, is where the bond has been assigned, judgment rendered against the bail, and the bail proving unable to respond such judgment. The other case is where the sheriff by "his *neglect*" perhaps in assigning the bond seasonably, "*his laches*" in failing to take the bond in the manner prescribed by law, or by "*his default*" in any part of his duty, shall impede the creditor in the recovery of judgment upon the bond. In which cases the sheriff is made absolutely responsible for such damages as the creditor has sustained. But in no case does the statute enable the sheriff to exhibit in defence the facts set forth in the notice.

: The only question now is, will the Court listen to the language of the sheriff, or that of the statute? The sheriff says he has once exercised his best judgment and taken bail, which he esteemed and can now prove was sufficient at the time of the execution of the bail-bond ; and that although such bail was manifestly insufficient when the creditor prosecuted the bail upon the bond assigned, yet the creditor must be the sufferer. The benefit of the judgment against *Seth Emmons,* the original debtor, is totally lost. But he has done his duty. It was not his fault, but the creditor's misfortune, that he esteemed *Lysander Richardson,* the bail, to be sufficient to respond damages upon the bond in case of escape.

The language of the Legislature, as expressed by the statute, is—

Mr. Sheriff, you may admit prisoners to the liberties of your gaol yard. You may take a bond for that purpose. You are made the sole judge of who shall be bail, and his or their sufficiency. But see to it that you take sufficient sureties, freeholders resident within the State, to secure the creditor in case of escape. The sufficiency of your bail shall be tried. Assign the bond or not, at your election. If you neglect or refuse to assign the bond, you must pay the original debt and damages to the creditor. If you assign the bond, and the creditor brings suit upon it, recovers judgment, takes out his execution, commits the bail to prison, or a *non est* is returned on the execution, and the judgment remains unsatisfied, the insufficiency of the bail you have accepted is fairly and fully proved; you must then pay the creditor yourself. And, as if the Legislature meant to guard against every possible evasion of the sheriff, or, if you impede the creditor after you shall have assigned the bail-bond by your neglect, laches, or default, you shall respond the damages yourself. In a word, look, Mr. Sheriff, to the sufficiency of the bail you accept, for you shall, in all events, answer for its responsibility.

A contrary doctrine to this held in the statute, it might readily be shewn would be attended with manifest injury to creditors. Make the sheriff, as may be contended for, a judge of the sufficiency of bail for the liberties of his prison, how much *bona fide* debt might be lost through the misconduct of a designing officer conniving with imprisoned debtors.

In an equitable view of the subject, to consider the sheriff and creditor both as innocent: Here is a

loss to be sustained by one of them. Who is to bear it? The creditor who has at great expense by course of law been endeavouring to compel his debtor to pay an honest debt, who never was consulted as to the acceptance of the bail, and had no control over the subject of admitting his debtor to bail; or the sheriff, who was the principal in the transaction?

*Nathaniel Chipman,* for the defendant. The statute does not give an entire discretionary power to the sheriff in the acceptance of bail for the liberties of the gaol yard. It defines the bail to be accepted, viz. "*freeholders resident within the State.*" Here is a rule prescribed to the sheriff. Here is the criterion of the sufficiency required by the statute; and here is the sufficiency set forth in the notice under the general issue.

When the sheriff had once accepted as bail " one or more sufficient surety or sureties, being freeholders resident within the State," he had effectually done his duty. The creditor had all the security required by the statute. Nothing could be more proper in the trial of the issue in an action instituted against the sheriff, than for him to give the very terms of the statute prescribing his duty in his notice in justification. Such justification would operate in a plea in bar.

It is said a loss is to be suffered by one of two innocent persons, the sheriff or the creditor; and that in an equitable view it will be unjust for the latter to sustain it.

I am not prone to argue from the hardships which may be suffered by parties in the determination of a

moot point; but in reply to the popular harangue of the plaintiff's counsel, it may be inquired if it is not equally *hard* upon the sheriff? Compelled by the statute, and even the constitution, to take bail of a certain description modified by the statute, for the liberties of the gaol yard, exposed to an action or liable to impeachment if he refuses, is it not hard, that when he has strictly observed his duty, accepted the bail required by the statute, and the bail should chance to be unable to respond the judgment rendered on the bond, to be made absolutely liable for all damages? Suppose a sheriff should accept the bail required by the statute, and the week afterwards the bailor should become bankrupt. Has the sheriff in such case any power to secure himself? Could he have any process against the bankrupt? Could he again close his prison doors upon the debtor, and demand new bail? Would not the statute, if it contemplated the sheriff as liable in the mode and to the extent contended for, have provided some process whereby the sheriff might secure himself? In most governments there is some peculiar indulgence shewn to their public officers, and in all governments, when they can shew they have done their duty precisely as prescribed by the Legislature, the courts of law will protect them.

*Marsh.* The whole matters in contest rest here. Are the facts stated in the notice under the general issue, such as could have been *well* pleaded in bar?

It may be determined by this concise view of the subject:

Udall
v.
Rice.

The sheriff accepted *Lysander Richardson* as a sufficient surety in a bail-bond for admitting *Seth Emmons* to the liberties of the gaol-yard. The bond has been assigned to the creditor, *Samuel Udall.* He has commenced a suit, and recovered judgment on the bond. The execution has been delivered to the same officer, who accepted *Richardson* as bail, and he himself has returned a *non est* as to person and property. Is it legal or even expedient, that the same officer should now be permitted to say in justification, that *Lysander Richardson* is *now* a man of sufficient property to respond the judgment? for he is certainly precluded by his return, his own official act, from saying to the contrary. Could the sheriff have well pleaded such justification in bar?

The Chief Judge delivered the opinion of the Court.

It is the opinion of the Court, that the facts proferted in the notice under the general issue cannot be admitted in evidence to the Jury.

The sheriff is compelled by the statute to admit prisoners committed upon execution founded on a proper action of debt, covenant, contract or promise, to the liberties of the gaol yard, taking a bond with sufficient surety or sureties, being freeholders resident within the State, with certain conditions prescribed in the form inserted in the statute, the principal of which is, that the prisoner shall not depart the liberties of the gaol yard, unless lawfully discharged. If an escape is made, the statute restricts the creditor from bringing any suit against the sheriff until he hath applied to him for the assignment of

such bond.    If the sheriff assign the bond to the creditor, he must institute a suit upon it against the bail. If bail proves *sufficient* to respond the judgment, no action will lie against the sheriff.   None is necessary. But if *insufficient*, the action then lies against the sheriff.    And what more ample proof of the utter insufficiency of such bail can be expected than what is found in the return of *non est* by the same sheriff made on the execution against the bail?

To say, that at the time of taking the bail, the bailor *was* sufficient, and to make his being a freeholder resident within the State at the time of the execution of the bond, a criterion of his sufficiency, would be to evade the statute.  The sheriff must take such bail as is not merely sufficient at the time of executing the bond, but such *as will be sufficient to respond the judgment*.   Even if the bail possessed ample freehold, subject to the creditor's execution, landed estate might not satisfy the creditor.   When he imprisoned the original debtor, nothing but money would satisfy the creditor if he insisted upon it.   He might perhaps have satisfied his original execution by levying it upon lands.  He preferred imprisoning the debtor *Emmons* in order to obtain the money, and he has an equal right to insist upon money from the bail.

The meaning of the statute is plain.   The sheriff shall at his own risk take such bail for prisoners admitted to the liberties of the gaol yard, as in case of escape shall be sufficient to satisfy a judgment in favour of the creditor in money.

Udall
v.
Rice.

The cause went to the Jury merely for the assess-ment of damages, which the Court directed the Jury to assess upon the damages and costs recovered by the plaintiff in his former suit against the bail, toge-ther with the officer's fees for the commitment of the bailor upon the *alias* execution, with simple interest.

*Charles Marsh*, for plaintiff.
*Nathaniel Chipman* and *Titus Hutchinson*, for de-fendant.